---

### THE J. B. KING et al.

(District Court, S. D. New York. January 24, 1901.)

.COLLISION—STEAM·VESSELS PASSING IN CHANNEL—FAILURE TO SIGNAL.

A steamer coming out through the Kills met two steam lighters with a tow going in, and took a course somewhat towards the left shore for the purpose of making a landing on Staten Island. The first and second signals of the steamer, indicating her intention of passing to the right, not being answered, instead of reversing, as was her duty, she changed her course to the right, and came in collision with the tow. Neither vessel signaled until they were within 1,000 feet of each other, although they were in sight of each other when half a mile apart, at which distance the rules require that signals should be given; and the winding course of the channel made the observance of the rule the more obligatory, as did also, as to the lighters, the additional fact that they were crossing the usual line of navigation of vessels coming out. *Held*, that all three vessels were in fault, and liable for the damages to the tow.

In Admiralty. Suit for collision.

J. J. Macklin, for libelant.

Cowen, Wing, Putnam & Burlingham, for the J. B. King and the Windsor.

Foley, Wray & Taylor, for the L. J. Busby.

BROWN, District Judge. The collision was at night within 150 feet of the Staten Island shore near Crab Tree dock, or the foot of Westervelt avenue. The steam lighters King and Windsor with their tow, entering the Kills against the ebb tide, were going only from one-half to one-third the rate of speed that the Busby was coming out of the Kills with the ebb. The King and her tow no doubt had the right to proceed to their landing on the Staten Island shore; but in the winding of the channel way and in crossing the usual line of navigation of vessels coming out of the Kills, it was specially incumbent on the King to give timely notice by signals of her intent to cross to port. The King and her tow entered the Kills somewhat from the Jersey side about 500 feet off from the docks at Constable Hook, where the ebb tide was weaker. The width of the Kills there was from 1,200 to 1,500 feet. To reach the place of collision, the tow must have, therefore, turned to port some three or four points at least, and traversed in a diagonal direction from 800 to 1,200 feet, during which time she must have shown her green light only to the Busby. Shortly before that she no doubt showed both colored lights.

The Busby, on the other hand, in the half mile west of the place of collision had also a somewhat winding channel, and would show to the King coming into the Kills first her red light, then both lights and then her green light. The captains on both sides complain of

each other that their first signals were not answered. The Busby, whose captain claims to have been the first to give a signal of one whistle, says he was off King's Dock when he first signaled the King. From this point to the place of collision is only about 1,000 feet, and the tow at that time could only have been 300 or 400 feet further distant, and during all that interval the tow must have been showing her green light, indicating that she was going to the Staten Island shore. From the evidence given by the lighters' witnesses, it is clear that the Busby was not seen until somewhat later, so that all the signals were given within a distance considerably less than a quarter of a mile. The rules require such signals to be given when the vessels come within half a mile of each other. There was no reason why they should not have been thus given in this case, and the winding course of both made the timely giving of these signals the more obligatory. The fault of the King in this respect is the greater as her signals were longer delayed, and she was crossing the ordinary course of vessels coming out of the Kills.

As the Busby was light it may be that she had sufficient time to go in either direction had the King answered the Busby's first signal. When her first and second signals were not answered, it was her duty to reverse at once. The New York, 175 U. S. 187, 201, 20 Sup. Ct. 67, 44 L. Ed. 126. Had she done so without having changed her course previously, there would have been no difficulty in her keeping off to port unless her second signal was unduly delayed. Under the rules, as the King had the Busby on her own starboard hand, the Busby should have kept her course until she received signals from the King, or stopped and reversed. The Busby, moreover, must have perceived for some little time previous that the King and her tow were crossing the Kills towards the Staten Island shore, which was an evident indication that she was going to one of the various landings there. This was an additional reason why, even in the absence of signals, the Busby should not have turned toward the Staten Island shore. The Busby was light and easily manageable; the tow was not. As the Busby, as well as the lighters, are to blame, the libelant is entitled to a decree against all.